May it please the Court, Louis Bograd for Plaintiff's Appellants, Justine Briggs et al., with me this morning, my co-counsel Hunter Shkolnick and Ryan Thompson. CAFA, the Class Action Fairness Act, confers federal jurisdiction over certain mass actions in which the monetary relief claims of a hundred or more persons are proposed to be tried jointly, but expressly excludes cases in which the claims are joined upon motion of a defendant. As this Court said in the Tano case, in opinion by Judge Berzon, by removing cases joined by defendants from CAFA's reach, Congress intended to allow suits filed on behalf of fewer than 100 plaintiffs to remain in state court, notwithstanding defendants' wishes for consolidation, however expressed. Tano held that CAFA's mass action provisions do not extend to situations in which plaintiffs file separate state court actions, each involving the monetary relief claims of fewer than 100 plaintiffs. That is precisely what plaintiffs have done here. Plaintiffs have filed five separate suits against Merck, none of which has more than 36 plaintiffs. Plaintiffs have not asked for a joint trial. Plaintiffs have not asked to have their cases coordinated before a single state court judge in a JCCP proceeding, as in the Korber case. The only thing plaintiffs have done, and the District Court's basis for its ruling denying our motion to remand, is to acknowledge in federal court, in response to a question from the District Court, the likelihood that these cases upon remand will be transferred to a pending JCCP proceeding in Los Angeles Superior Court. Well, one of your colleagues used the magic words, for all purposes, and those words were seized upon by the District Judge. How do you respond to that? Your Honor? Those having been the magic words in Korber. Those having been the magic words in Korber, but in Korber, as opposed to this case, the petition for coordination in state court had been filed by plaintiffs, so the question was the meaning of their petition. All Mr. Shkolnick was doing here in quoting that phrase was invoking the language of the statute to describe the proceeding that was already underway in state court. But he said we anticipate that we will go back to Judge Heiberger, quote, for all purposes. What did for all purposes mean in that sentence? Your Honor, as Judge Berzon knows because I argued the case in front of her, I don't agree with the holding in Korber, but recognizing Korber is good law. There it is. We are not taking the position today that the pending JCCP before Judge Heiberger isn't for all purposes or doesn't include joint trial. We're not making that argument. Our argument is entirely focused on the question whether plaintiffs have proposed a joint trial, and plaintiffs have not proposed. The problem, I mean, Mr. Shkolnick did a bit more than simply project. I mean, he advocated that this was all a wonderful idea as well as opposed to having it in federal court as part of the MDL and going all over the country and so on. So he, it was, and there was no discussion at that earlier hearing as to how it was going to get to Judge Heiberger. But he certainly thought it was a pretty good idea and argued it as a reason why the judge should exercise his discretion with regard to the fraudulent joint promotion to send it back. Well, Your Honor, I think it's important to understand what had been the procedural history in state court. Eli Lilly, who's another defendant in this larger, in Creighton's litigation, had sought the creation of the JCCP I think four years before these cases were initiated. And defendants had consistently moved to have every state court in Creighton's case throughout California that was filed transferred to the JCCP. So there was absolutely no question that if the cases went back to state court, what was likely to happen was that defendants would file an add-on petition to add these cases to the JCCP. So the only question... I think that was all triggered in the first place by the defendants, not by the plaintiffs. It was triggered by Eli Lilly's original petition and then by subsequent add-on petitions, all of them filed by defendants. Oh, it was just a realistic prediction about what was going to happen. Exactly, Your Honor. Natural and probable consequences of his acts. Right. So the question that the judge asked is, if I send this case back to state court, am I going to burden some new judge who's never thought about these issues with all these questions? And Mr. Shkolnick said, no, that's not what's going to happen. They're going to end up in front of Judge Heiberger. You've already been coordinating with him in the JCCP. He's, you know, there's been consultation between the courts. At that time, what was known about the proceedings in front of Judge Heiberger as to bellwether trials that might be conducted, other kinds of trials and so on, and how does that fit into the for-trial provision of CAFA? Well, again, Your Honor, I don't think you have to get to any of those questions because our position is we've never proposed a joint trial, so it doesn't matter what's happening in the JCCP. Well, you may be right and I may end up agreeing with you, but could you please answer the question? There is a case management, there are a number of case management orders, obviously, in the JCCP proceeding. I think the expectation is that there will ultimately be bellwether trials. He's never said a bellwether trial. I don't believe any. To date, he hasn't said a bellwether trial. And just so we're clear, our position would be, although we haven't gotten to that point yet, that a bellwether trial is not a joint trial under CAFA. It could be just one plaintiff. Right, because the case law says a bellwether trial is only binding on the parties to that trial. There's some Seventh Circuit case law that talks about what would happen if you had a bellwether trial that was binding on all the other plaintiffs. Well, it may be binding in the sense of non-mutual collateral estoppel. But even there, the likelihood that you would be successful, you know, you hold the first bellwether trial, the defendant loses, and every other plaintiff runs in and says liability has been established for all our cases. Maybe. You may need two or three. Who knows? Yeah, I think the likelihood that the court is going to let us use offensive collateral estoppel on that fact, assuming we win the first case, we lose the first case, I think there's no chance it's binding. So I don't think a bellwether trial is. So the notion of the bellwether trial is kind of to facilitate settlement. Is that the idea? Exactly. Everybody sees how it plays out. I mean, both as to result but also what it looks like in terms of who says what and so on. And then they. What are the, you know, it's a trial run. What do the witnesses say? What do the experts say? What does the jury believe? How do they value these injuries? And then the parties now with a great deal of additional information about what, how to value all these cases. As I recall, the assumption at the time of Korber, and I don't know whether it surfaces in the opinion, is that this does count. But at least the parties seem to be talking that way at the time. We weren't talking that way, Your Honor. In fact, in the briefs in Korber, we explicitly said that it didn't count. But the other side was citing, saying it doesn't really matter if there's just one big trial with a thousand plaintiffs in the courtroom, because look at all these Seventh Circuit cases that say as long as it's, that binding bellwethers count. We didn't, that issue never really got resolved because the court said, we're not going to say that all, we don't have to say that all JCCPs are proposals for joint trial. But this one is because the plaintiffs invoked the magic words for all purposes. But I want to focus on the word propose, because the key concept in the mass action provision is propose. That there has to be a proposal for a joint trial, and that proposal has to come from our side, not from the defendants. And does the proposal have to be to the state court? Well, that's, that was my second point, Your Honor, but let me, but I'll get there in half a second. So the first thing is what is a proposal? My understanding of a proposal is, you know, sitting around over lunch and saying, gee, wouldn't it be great if we got all these, you know, we're able to trial these cases in a single sitting? That's not a proposal. A proposal is a request, you know, putting an idea before somebody. Well, I don't know. If you look at the state, what happened in the federal court, I mean, you had a judge who had discretion, right, to either send it back or not send it back. And somebody's standing up there and saying, I propose that you send it back. And why? Because if you send it back, this is what's going to happen. Actually, Mr. Schwartz never used the word propose. I know he never did, but that's what he's saying. He's saying, you know, given the two choices you have, if you, I suggest, or I want you to send it back and it's going to end up in a joint proceeding anyway. So as far as a district court was concerned, was it the same district judge both times? I'm sorry. Was it a single district judge? Yes. He might have felt a little sandbagged, don't you think, which might be some explanation for what went on here. I don't think so, Your Honor. I mean, I think the reality is that these cases are, if they're sent back, are going to end up in the JCCP. But as far as he was concerned, he was given two choices, not a third choice, i.e., send it back and it won't go to Judge Heiberger. I, that may well be, Your Honor. That's the choice he made. In other words, I'll send it back and it will go to Judge Heiberger. I would, to the extent that he might be surprised and we would certainly be surprised if the cases were to be sent back and defendants didn't move to coordinate, yes, we would all be caught off guard. But I'd like to, so to begin with, I think the word proposal means something more than just speculation. And indeed, in the Corral case. But you just said it really wasn't speculation. It was a complete foregone conclusion. Well, I mean, it's speculation in the sense that it hadn't happened yet and we expected the other side to do it. But the situation is very analogous to the situation that confronted Judge Posner in the Corral case where the plaintiffs, in opposing a motion to dismiss for foreign known convenience, said, this is, you know, defendants are saying it's inconvenient because they're going to have to have multiple trials and fly their employees in from Washington State to Illinois. And the plaintiffs said, well, that's not likely to happen because what really happens in aviation cases is you have a bellwether trial and it's judgment of liability, they said in that case, would be binding on the other cases. And therefore, you know, it's a lot less inconvenient than Boeing claims. And Judge Posner said, well, that doesn't trigger CAFA because the defendants were moved after that statement was made. It doesn't trigger CAFA because it was merely a prediction about what was going to happen, not a proposal that it happened. Do you want briefly, because your time is very low, to comment on this strange business about whether there were or weren't separate add-on petitions filed? Sorry, but I do, Your Honor, but can I respond to this question which I haven't answered yet? So nobody gets sort of misled or nervous about time. Answer my question, answer Judge Berzon's question. If we run over, we run over. Excellent. Okay. Thank you, Your Honor. Judge Fletcher, you asked me the question about whether the proposal has to be made in state court. In order to qualify as a proposal for CAFA. The Seventh Circuit says yes. It's the only court that has addressed this question in its Abbott's Lab decision. They say CAFA does not say where a proposal for a joint trial must be made, but a reasonable conclusion is that it must be made to a court that can effect the proposed relief. And that's at 698 F3rd 573. And the reason that the phrasing, there was a similar statement made by Judge Posner in Corral, but in the Corral case it was, he said it has to be made to the court in which the case is pending because the procedural situation was different. Plaintiffs in Abbott Labs tried to use that language to say it doesn't apply. That's sufficient as an answer. Okay. So I think the Seventh Circuit is absolutely right on this point. It can't be a proposal when it's made. I said that's sufficient. Okay. I'm sorry, Your Honor. I got it. Then Judge Berzon asked me about this issue, about the add-on petitions. Yes, let me clear that up. There's two separate questions here. There was one add-on petition filed by the Christ plaintiffs only back when there were far fewer than 100 cases against Merck. And that petition was immediately mooted by the initial removal, not the CAFA removal, but the removal on diversity grounds. Plaintiffs have never renewed it. Merck in its briefs suggested that plaintiffs had filed add-on petitions in two of these cases after the case went back down. Their evidence for that was these two notices issued by the JCCP supposedly returning checks to support the petitions. We have finally been able to get documentation from Eli Lilly that those were, in fact, because we knew we hadn't filed the petitions, were, in fact, petitions filed by Eli Lilly and that the form, while the form says the checks are going back to us, they were really going back to Lilly. We sent that information to counsel on the other side, and they were kind enough to write a letter to the court clarifying that, based upon this new evidence, they acknowledge that there were no subsequent petitions. Well, they didn't quite say that. They said there's a docketing error, and then they didn't say what it was. Well, then I'll let them clarify, Your Honor. I'm going to ask them, you know, if there really is an error and they really were defendant, why didn't you say so instead of just saying there's a docketing error? But, okay, I got it. Your Honors, the other issue is timely. The district court did rely in part on the fact that there were such petitions. The district court did rely in part in the fact on those. No, he did not, Your Honor. He did in his, well, his first ruling is a little vague on what his reasons are. He sort of said totality of the circumstances and threw out a lot of stuff. That was, you know, that was the primary reason for the motion for reconsideration was to clarify the basis for the ruling, and as we make clear in our brief, in his ruling on reconsideration, Judge Battaglia was kind enough to clarify, I'm not basing this on the initial JCCP filed by, because I recognize that was filed by a defendant. I'm not basing this on these disputed add-on petitions. I'm not basing this on the likelihood that there will be bellwether trials in state court. I am basing this entirely on the fact, on the answer that Mr. Shkolnick gave in the first oral argument and on a footnote in the Briggs motion to remand. And I, curiously, Your Honor, the text of that footnote is actually a quotation from Judge Battaglia's first ruling. That's all it is, is us quoting the judge back to himself, and you said against us. And Martinez seems to be, well, if I'm going to do four, I might as well do five. I think that's exactly right, Your Honor, and I think Martinez, not to put too fine a point on it, I think Martinez clearly falls under Tano. It's exactly the same situation, and I don't see any basis whatsoever for that case to even arguably be here. There's also the issue of timeliness. I can save that for rebuttal if the court cares to speak to it. Why don't you talk about the timeliness, because I think it's going to be on the table when they stand up. I have no doubt, Your Honor. Timeliness. There's no dispute that plaintiffs moved for reconsideration within 10 days of the original order, and there's no dispute that we filed our petition for leave to appeal within 10 days of the denial of reconsideration. So the only question is whether the 10-day period in 1453 C.I. runs from the original ruling or whether it runs from the denial of reconsideration. And the standard rule in other circumstances is  Absolutely, Your Honor. Not only standard rule. I mean, the Supreme Court has described it as the well-established rule in civil cases, the traditional and virtually unquestioned practice. And not only in Rule 4, it's incorporated in Rule 4 of the Federal Rules of Appellate Procedure for purposes of appeals from final judgments, which is obviously not what we have here. Both the Seventh Circuit and the Eleventh Circuit in the Blair case and the Shin case that we cite in our papers have said that same rule clearly applies to petitions for leave to appeal. All the arguments for why it would be better to get the District Court to correct its own mistakes rather than bothering the Court of Appeals apply with full force here. Same rule applies here. One argument the defendants make in their responses, they say, well, but 1453 is statutory. It's not a rule and that that should make some difference. That's not correct. In Dieter, one of the Supreme Court cases, the rule requiring the prosecutor to appeal a dismissal of an indictment within 30 days was statutory. It was in 18... Well, of course it is statutory, but the question is what does the statute say and the statute is silent as to when the time starts to run. But all of these statutes are silent. So I think it's either here or there. Well, I wholeheartedly agree, Your Honor, and in Dieter the Court... I thought you might. And in Dieter the Court specifically rejected almost exactly this precise argument because the Court of Appeals had said it's a statutory provision and therefore... I think we've got your point and I just want to make sure it was on the table from your side before we hear the other side. I appreciate it, Your Honor. Thank you very much. I reserve whatever time you'll give me for rebuttal. That's right. You're over, but we will make sure you get a chance to respond. Good morning and may it please the Court. Kristen Shapiro for Appellee Merck Sharpen Dome Corporation. I'd like to start with the timeliness issue. Judge Fletcher, you said with your colloquy with Mr. Bograd that the statute 1453C1 is silent as to when the time starts to run. Unlike Mr. Bograd, I do disagree with that contention. Section 1453C1 says that the time starts to run from entry of the district court's order granting or denying the motion to remand. I think that's a pretty straightforward indication that the time starts to ran in this case when the district court denied plaintiff's motions to remand. Well, I'm not sure that it has your meaning because it's fairly common to file motions for reconsideration. The district court's answer to motions for reconsideration is very often useful to the Court of Appeals and to the parties even if he ends up with precisely the same answer. And your reading of it would mean that the district judge really never does get to entertain a motion for reconsideration. Well, I think that's the natural consequence of the plain text of this provision. Now, your suggestion that plaintiffs aren't asking for an exception to this provision is relating to the standard rule that Mr. Bograd referred to. I would resist the idea that there's a standard rule saying that a motion for reconsideration told a clearly stated statutory deadline and the vast majority of appeals are appeals from final judgments. So in that case, the standard rule is just a reflection that the statutory deadline there's no final judgment until a motion for reconsideration has been decided. The language is a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action if application is made to the Court of Appeals no more than 10 days after entry of the order. An order denying a motion to reconsider a denial of a motion to remand isn't that also an order denying a motion to remand? No, it's not. For example, the order here it doesn't, you know, that the text, the relevant text of the order doesn't say, you know, it's also again denying plaintiffs motion to remand. Oh, but in practical effect it is. I would disagree. And so actually you see this although we resist the analogy to 23F that plaintiffs draw in their brief in general you see this analogy drawn in the Rule 23F context because the idea that a motion to reconsider a class certification in the 23F context would itself be an appealable order has been rejected. Otherwise, plaintiffs, for example, could file a motion to reconsider a year after the order had been entered and that motion to reconsider Not according to most local, you couldn't do that legitimately and if you did you're still appealing the motion the order within the terms that it exists so if it's an untimely order or if it's an order that asks for reconsideration and is simply denied on the grounds that this is nothing new, then you lose when you appeal. But why does that mean that it's still an order that denies a remand? It's just pretty clear in the Rule 23F context that the order on the motion for reconsideration is not itself an order. Where is it clear? It's the distinction that courts have drawn in the Rule 23F context because you do see motions for reconsideration that are filed outside the time to file an appeal and the courts have said those motions for reconsideration are not motions denying or granting class certification under Rule 23F they are just orders on a motion for reconsideration. Now I'd like to comment on Dieter and Section 3731, 18 U.S.C. 3731 which Mr. Bograd referred to because that's the only statutory deadline of an interlocutory appeal as opposed to a final judgment that plaintiffs have identified. Section 3732 has been interpreted to actually give the Supreme Court the authority to make rules governing the timing and procedure of criminal appeals which is the Statute 3731. There's a very interesting history of this that's set forth in Wright & Miller 3950.8 and in light of 3732 deadlines for criminal appeals have actually been held to be claims processing rules and not jurisdictional. I'll direct you to United States v. Frias, that's the Second Circuit case 521 F3D 229. Plaintiffs have not identified any case where a deadline that's clearly expressed in the statute has been held to be accepted a jurisdictional deadline that's been held to be accepted in light of a motion, an exception in light of a motion for reconsideration. Now to the extent as you suggested that you think there's ambiguity in Section 1453 C1 I actually think that cuts in our favor. Section 1453 C1 is a statutory exception to the final judgment rule and as such it must be strictly construed. If there are no further questions I'd like to turn to the merits. If the court reaches the merits it should affirm the district court's order. In all respects, even Martinez? Yes, and so with respect to... But is there possibly in Martinez that would support the district court's order? It's an implicit proposal that the district court found with respect to Martinez. By simply filing in the county? They filed it in San Diego Superior Court same law firms, basically the same allegations, same type, same time period and I will also note that with respect to Martinez their motion to remand in Martinez conceded that the Plaintiff's Council did propose to consolidate this case, including Martinez in the JCCP, that is ER 137-138. Now, ER 138 we only included one motion and that's actually the motion from Johnson in the excerpts of record, but the motions for all five cases were that that language appears in the motions for all five cases. Given the clear air standard of review and the fact that it's very clear that a proposal for a joint trial can be implicit I think it is very difficult to say that based on the totality of the circumstances the district court clearly erred in finding a proposal for a joint trial including with respect to Martinez. Now, with respect to the other cases as well to kind of step back the totality of the circumstances, first and foremost is Plaintiff's Council's statement at the August 7th hearing. Plaintiff's Council, they... Now that was in response to a question by the district judge, correct? It was. So to provide some background, Judge Paez Merck's initial notices of removal that were at issue in the August 7th hearing argued that the district judge should exercise its discretion under Rule 21 to sever non-diverse parties and parties that were an impediment to jurisdiction. Plaintiffs resisted the idea that the district court had discretion to do so, but at ER 150 the district court opened up the hearing and said, these issues actually give me wide discretion. And so first and foremost, my question to you Plaintiff's Council, is what is going to happen to these cases on remand? Are they going to end up before Judge Heiberger or some other judge? Mr. Skolnick got up and answered on behalf of plaintiffs, he said I can answer that question directly. Those cases are going to be transferred to Judge Heiberger for all purposes and will be coordinated with the JCCP along with the JCCP and the MDLR itself being coordinated. Now for all purposes, of course, is the magic word are the magic words in Korber but do they mean the same thing here? I think so, and at ER 9, the district court actually considered whether or not Plaintiff's Council's remarks at the hearing were cursory remarks or serious representations. I'm quite willing to assume they were serious representations, but do they mean the same thing? That is to say, what's going on in the JCCP? What is going on in the JCCP is that with respect to the pancreatitis cases because the JCCP was created for pancreatitis cases it's only recently that it's been expanded to include pancreatitis Judge Heiberger has ordered a series of bellwether trials and in addition, Plaintiff's Council and the JCCP has requested that the same bellwether trial system be implemented for the pancreatic cancer cases. But if we were to hold, I'd rather suspect you don't want us to hold, but as a hypothetical if we were to hold that bellwether trials are not trials, joint trials for the purposes of CAFA when he says, it's going to go back to Judge Heiberger for all purposes it's only going to be for all purposes in terms of what's going on in the JCCP. Therefore, what happens if that's the assumption that the bellwether trials don't turn this into trials within the meaning of CAFA? As a legal matter, I just want to clarify the law. It's pretty undeveloped about whether or not bellwether trials would constitute a joint trial. Let's assume that we develop it in the way you don't like which is to say that bellwether trials don't constitute trials for purposes of CAFA and removal. Then I will go back to something Judge Berzon alluded to when she was discussing with Mr. Bograd that I really don't think the court needs to get into this because in Korber, the court very much considered exactly what might constitute a joint trial and filed various procedural issues with the JCCP and they said, you know that there's a proposal for a joint trial when two key considerations are present. One, plaintiffs have proposed coordination in a California JCCP and two, that proposed coordination is for all purposes or for purposes of avoiding inconsistent rulings. Here, you don't just have the magic for all purposes language. You also have, in addition to ER 152 at the hearing plaintiff's counsel said they're not going to be inconsistent orders because these cases are going to be before Judge Heiberger and coordinated. The question is, the original joint proceeding in California wasn't triggered by the plaintiffs nor were any of the add-ons triggered by the plaintiffs. Nor were they representing that they were going to ask it to be sent to Judge Heiberger. They were just predicting with a fair degree of certainty that they would end up before Judge Heiberger either because the defendants would bring them there or perhaps because the trial judges themselves would bring them there. So, supposing that that's all what happened is that a proposal by the petitioners by the plaintiffs for a joint trial assuming that the Heiberger proceedings otherwise meet Korver? A mere prediction that the cases would be transferred to Judge Heiberger I do not think would constitute a joint trial. A proposal for a joint trial. I think while plaintiffs now try to characterize now that Korver's been decided because these statements and plaintiff's motions were filed before Korver I think plaintiffs now try to characterize their statements as mere predictions. Their statements are much stronger than that. The District Court found that they represented these cases would be transferred to the JCCP. But they didn't represent that they would transfer them. And the District Court further found that they filed their motions to remand and supported them by arguing that the JCCP was the appropriate forum. Is your position that the proposal was the proposal that was made in federal court because the District Court did have authority and as you say he was not simply he was promoting this as a reason why the things should be sent back rather than having discretion exercise to keep it here. Is that the proposal you're talking about? Or are you saying that he was essentially telling the District Court that he was going to make a proposal in state court? It's the proposal in federal court and with respect to plaintiff's argument that it has to be to a state court. I think that overreads dicta from the 7th Circuit. Mr. Bograd read the quote from Abbott which said it just needs to be to a court to effect relief. Not only is that dicta but also the District Court here didn't have the ability to grant 100% relief and consolidate but a necessary first step to get these cases tried before Judge Heiberger would be granting the motions to remand in the District Court. Now I'd also further point to this court's decision in Tano which Mr. Bograd, actually the part that Mr. Bograd quoted in his introduction suggests that the joined upon a motion of a defendant exception that part of Tano says that the joined upon a motion of a defendant exception can be satisfied by a pleading in federal court. In that case it was the notice of removal filed by defendants. I think if the joined upon a motion of a defendant exception can be satisfied by a statement in federal court so too can the underlying mass action provision especially given that the joined upon a motion of a defendant exception should be construed narrowly in light of the fact that it's an exception. Now I wanted to, we talked a lot about the hearing but I wanted to also say Let me go back to the joined upon motion of a defendant Let's assume that the cases are remanded from the District Court to the State Court How do they then get to the JCCP? Are the plaintiffs then going to move or are you going to move? Well that's one point. The plaintiffs have filed a petition for coordination They admit that they filed a petition for coordination in May and Crease So I don't, I think it is plaintiffs are, in their district court plaintiffs represented that these cases will be transferred So I think the natural finding there is that plaintiffs are representing that at least if defendants don't move they're going to move it to petition for coordination But they don't say that They don't say that. The district court said, it found at ER8 that plaintiffs represented these cases Given the nature of the cases it seems, and if you know anything about how state court litigation works these cases would end up for the coordinated court They just would Even the Superior Court judge in San Diego could send these cases to Los Angeles That's right, and plaintiffs themselves have filed a petition for coordination And indeed they said at the hearing, not just the cases we transferred They said they filed these cases in state court for the explicit purpose of getting their files before Judge Heiberger At the time the coordinated proceeding was set up after it got underway Judge Heiberger entered several case management orders At the time of this hearing before Judge Mattaglia What did the case management orders provide for? The case management orders provided for bellwether trials with respect to the pancreatitis cases That was in a new order? That was in a case management order And then plaintiff's counsel in the JCCP had filed a status report asking for a system of bellwether trials for the pancreatic cancer cases And did the case management order say anything at all about the binding nature of the bellwether trials? No, and with respect to whether or not bellwethers need to be binding I'll direct this court to Atwell and Abbott which suggest that just bellwethers where the legal issues are applied to the remaining cases, like Daubert, etc would also constitute a joint trial of the cases So the one case management order that I've looked at is the number one, the first one that Judge Heiberger filed And he said this order does not constitute a determination that these actions should be consolidated for trial and does not have the effect of making any person or entity a party to an action in which he, she, or it has not been named and served Correct. Subsequent case management orders have imposed bellwether trials But hasn't required that there be joint trials Required joint, is this the issue of whether or not Right, because a bellwether trial, usually the parties pick somehow there's some, among the case management committee there's a determination of which cases will be suitable for a bellwether trial The way Judge Heiberger did it for the pancreatitis cases is Judge Heiberger randomly selected 25 cases for a series of bellwether trials And they're going to be tried individually, correct? Those cases actually settled before trial, is my understanding But the 25 cases would be tried individually Again, with respect to whether or not that constitutes a joint trial I would, as a legal matter I would direct this court to, as I said, Abbott and Atwell which suggests that bellwether trials where the legal rulings not factual rulings or any sort of preclusion are applied to the remaining cases, it does constitute a joint trial Otherwise you're rendering the mass action provision a nullity And as a factual matter the plaintiffs stated in the hearing on the motions to remand that they filed their cases in state court for the explicit purpose of getting their trials before Judge Heiberger Getting their trials before, or getting the case before Judge Heiberger? Trials, they said trials That's ER 152 and ER 153 Now I think it's notable that the cases we've all been discussing here were decided before the Supreme Court's recent clarification in December in dark Cherokee, that unlike most removal statutes CAFA must be interpreted expansively to ensure that large, multi-state actions are heard in federal court At ER 12, the district court said this policy is served by having these cases in federal court Indeed, they constitute by my count about 170 plaintiffs 160 of whom are not from California These are exactly the sort of cases that should be heard in federal court under CAFA Before you sit down we all received and read carefully the letter that you submitted and at the end it seems that your language is quite cautious I'm just reading from the last paragraph the last full textual paragraph of your letter You say, we agree with appellants that while the court notices indicate that appellants filed the petitions there appears to have been a docketing error Now, do you mean by that that these notices were filed by defendants? Yes Why didn't you say that? The notices were issued by the state court and the notices indicate that plaintiffs filed the add-on petitions The docketing error appears to be that a defendant, Eli Lilly, filed the petitions I'm sorry if there was any unclarity Yes, the docketing error is that the state court should have directed the notices towards Eli Lilly Yes, because as read here I had to back up and do a lot of sort of, what is she talking about? You could have just said they were done by defendants I apologize. I thought I said that the docketing error indicates that it had been filed by a defendant but I apologize if that was unclear You were sort of overly cautious I mean, there it was and I appreciate your candor in sending the letter but it would have been helpful to have a clearer sentence there at the end I apologize Thank you Why don't we put two minutes on the clock Your Honor, I'll be very brief First Speaking for appellants, we would be delighted if you were to clarify that the holding of bellwether trials in a JCCC proceeding does not constitute a joint trial That issue as such has not really been briefed It has not, Your Honor We have certainly not raised that issue I do think there was a flavor underlying Korber because of the language in the Seventh Circuit and Eighth Circuit decisions about binding bellwether trials of thinking that somehow a bellwether trial would constitute a joint trial under CAFA It clearly does not under prevailing law about the binding effect of bellwethers What about the argument that there's language in TANO in Part 2 of TANO which suggests that the proceedings before the federal court are relevant to determining who, if anybody, is making proposals Your Honor, I was just glancing at TANO trying to find what the defendant was referring to I believe what you said in TANO is that defendants don't get to evade the provision of CAFA that says defendants' motion can't trigger a removal by simply removing and treating that as a motive joinder It's all in the context of construing what does it mean for plaintiffs to propose a joint trial and all you conclude is that plaintiffs don't propose a joint trial by filing seven separate actions, each with fewer than 100 plaintiffs I don't think I couldn't find a passage that suggested that even the notice of removal would have been filed in state court but I don't see anything in the passage that suggests that somehow something defendants would do in federal court would count and I just wanted to comment very briefly on my esteemed co-counsel's comments about motions to reconsider a year later all of the doctrine we cite Healy, Dieter, Ibarra, Shin, Cobb all talks about a motion for reconsideration that is filed within the time available to notice an appeal or petition for leave to appeal the well-established rule is that if you file the motion for reconsideration in that window then the clock for appeal will not begin to run until that motion for reconsideration has been decided we've certainly not suggested that a motion for reconsideration would be filed a year later or at any time after 30 days or 10 days in this case would trigger the same exception Thank you, Your Honor Thank both sides for very good arguments Briggs vs. Merck, Sharp and Dohm submitted for decision
judges: Fletcher, Paez, Berzon